979 So.2d 536 (2008)
Lisa W. Wall Wife of/and Guy E. WALL
v.
HMO LOUISIANA INC.
No. 07-CA-744.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*537 Jonathan R. Cook, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellee.
Charles A. O'Brien, III, Attorney at Law, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
CLARENCE E. McMANUS, Judge.
Plaintiffs filed a petition for damages for negligence, intentional and/or negligent misrepresentation, breach of contract, breach of fiduciary duty and unjust enrichment, alleging that defendant failed to cancel an individual health insurance policy and continued to take premiums for two years, despite the fact that the same company had also issued a group plan under which she was insured. Subsequently plaintiffs' petition was amended to allege additional claims of unfair and deceptive trade practices in violation of R.S. 51:1201 et seq. Named as defendants were HMO Louisiana Inc. and its agent, Kim Pellegrin Broussard.
Testimony at trial established plaintiff had an individual insurance policy that covered herself and her family and that she paid the premiums by monthly automatic bank draft. Thereafter, HMO Louisiana was contacted on behalf of Wall and Wall (the law firm of plaintiff's husband) in order to obtain a group policy. Ms. Wall testified that she informed HMO Louisiana's agent, Kim Broussard that she wished to cancel her individual policy, and was told that it would be taken care of. In applying for the group policy, Ms. Wall filled out several forms including a form indicating prior continuing coverage. On that form, Ms. Wall listed her individual policy, and recited a prospective termination date (in order to avoid a lapse in coverage). That form was dated and signed.
For the next two years, HMO Louisiana continued to withdraw the premiums for the individual policy. Plaintiff testified *538 that she knew the funds were being withdrawn, but she thought that they were for her family coverage under the group policy. Plaintiff admitted that she received a renewal notice after the first year, but she placed it into her files unopened, believing that it too related to the group policy. When she received the renewal notice the second year, she first noticed that it was for the individual policy, and not the group policy. She contacted Ms. Broussard, who told her that her payments would be refunded. When HMO Louisiana refused to reimburse her, she filed this suit.
After trial on the merits, judgment was rendered in favor of the plaintiffs and against HMO Louisiana, Inc. in the amount of $16,400.73. The trial court further rendered judgment in favor of Ms. Pellegrin and against plaintiff's, dismissing their suit against her. The trial court, in its oral reasons for judgment, found that
Based upon the terms of the contract, which is P-3, Subsection J and Subsection F, it is quite apparent to the Court that the contract was drafted by HMO Louisiana, and any ambiguity will be interpreted against HMO Louisiana. It's pretty clear that the form which has been labeled as P-4 is also a form generated by and used by HMO Louisiana, and any ambiguity with regard to that form would be interpreted against the company; because, by the contractual provisions of Paragraph J, a party cannot have two HMO Louisiana, Inc., contracts at the same time for hospital, medical, and/or comprehensive benefits. The Court finds that the individual contract, upon the inception of the group contract being placed, ceased to exist and was, thereby, cancelled by its very own terms.
The court denied the additional damages under unfair trade practices, stating that "The Court does not believe at this stage of the trial, which has concluded, that sufficient evidence has been introduced to suggest that this was an unfair trade practice which would warrant any additional damages."
HMO Louisiana has appealed from this judgment. On appeal, it does not allege that the trial court erred in finding that the notice of termination of policy provided by plaintiff was adequate. HMO Louisiana argues that the trial court erred in failing to reduce the damage award by plaintiffs' failure to mitigate their damages, and in failing to give credit against the recovery in the amount of benefits paid pursuant to the individual policy. Plaintiffs respond that defendant did not meet their burden of proof regarding the affirmative defense of failure to mitigate. Plaintiffs further contend that there was no evidence to support any finding that benefits were paid under both policies, and therefore HMO Louisiana is not entitled to a credit.
Plaintiffs answered the appeal, alleging that the trial court erred in failing to find that defendant's actions constituted unfair trade practices warranting damages and attorney's fees under R.S. 51:1201.
LSA-C.C. art. 2299 provides that "A person who has received a payment of a thing not owed to him is bound to restore it to the person from whom he received it." LSA-C.C. art. 2300 states "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist."
In this case the trial court found that, by its very terms, the individual contract of insurance ceased to exist when the group coverage was issued. This finding was not disputed by the appellants. The premiums paid thereafter by plaintiff were for discharge of an obligation (insurance *539 coverage under an individual policy) that did not exist.
Appellants argue that plaintiff was negligent in failing to realize that the withdrawals made each month were for the individual policy, and therefore she breached her duty to mitigate her damages. However, negligence per se is not a bar to recovery for the payment of a thing not due. Williams v. Bank of Louisiana, 454 So.2d 1138 (La.App. 4 Cir.1984), writ den. 460 So.2d 611 (La.1984); Shelter Ins. Co. v. Cruse, 446 So.2d 893 (La.App. 1 Cir.1984).
Appellant also argues that the trial court erred in failing to give credit for payments made under the individual policy for medical expenses incurred during the time period in question. In brief, appellants argue that they paid over $3000.00 on medical claims. Plaintiff testified that she received a check for $46.00 and her pediatrician received a check for $600.00, however these checks were not negotiated. The record fails to substantiate appellant's allegations of payments made, and therefore it did not meet its burden of proving that it was entitled to credit for payments made.
Considering the foregoing, we conclude that the trial court did not err in rendering judgment awarding full restitution of the payments made by plaintiff to defendants.
Plaintiff, in answer to this appeal, alleges error in the trial court's finding that there was insufficient evidence to find liability under Louisiana's Unfair Trade Practices Act, LSA-R.S. et seq.
The Louisiana Unfair Trade Practices Act is embodied in LSA-R.S. 51:1401 et seq. LSA-R.S. 51:1405(A) makes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. Acts which constitute unfair or deceptive practices are not specifically defined in the statute and are determined by the courts on a case-by-case basis. In order to recover damages for a claim made under this act, a plaintiff must prove that the conduct offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. For conduct to be unfair it must offend established public policy. Fraud, deceit and misrepresentation constitute deceptive practices.
Dixie Sav. and Loan Ass'n v. Pitre, 99-154 (La.App. 5 Cir. 7/27/99), 751 So.2d 911, writ den., 99-2867 (La.12/10/99), 751 So.2d 855.
The trial court reviewed the record and found no conduct which would support a finding that defendant engaged in unfair trade practices. We cannot say that the trial court was manifestly erroneous in this determination.
For the above discussed reasons, the judgment of the trial court is affirmed. Each party is to bear its own costs.
AFFIRMED.